## PIERRE UZUREAU v. J. MIGNOLET.

Material men and workmen are incompetent to prove for each other in a suit against the owner of a building that he paid the contractor by anticipation, and that consequently he is liable to them for the materials and work done.

One cannot be a witness for others to create or increase a fund, to a portion of which the witness will himself be entitled.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *L. Castera*, for appellant. *C. Dufour*, *Watts* and *Spring*, *Le Gardeur*, *V. Burthe*, *J. Livingston*, *David*, *Latour*, *Grivot*, *Mellaerts*, for appellees. The judgment of the court was pronounced by

SLIDELL, J.   A contract by notarial act and duly recorded was made between *Uzureau* and *Mignolet*, by which the latter agreed to erect certain buildings for the former.   A small sum was paid in cash at the date of the contract, and the residue was to be paid in installments at various stages of the work.   The third installment was to be paid when the floors should be laid and the roof finished. *Mignolet* performed part of the work; but after receiving the third installment made default.   *Uzureau* was consequently obliged to employ others to finish the building.   *Mignolet* contracted large debts for supplies of materials and for work, and hence the present controversy between *Uzureau* and *Mignolet's* creditors.   In the pleadings they charge fraud on the part of *Uzureau* in the making of the contract; but this is alleged in a vague and obscure manner, and we think the district judge did not err in refusing to hear evidence respecting the inadequacy of the price stipulated in the contract, which was offered with reference to that charge.   Upon this branch of the case we may remark that the contract between *Uzureau* and *Mignolet* was unquestionably a real contract; and if *Mignolet* chose to undertake the work at too low a rate, it shows that he was imprudent, and that *Uzureau* made a bargain which would have been an advantageous one to himself if *Mignolet* had fulfilled it; but we are at a loss to understand how such inadequacy of price can be deemed a fraud upon those who, with the contract before them, choose to furnish materials, &c., to the contractor.   It will also be observed that the creditors affirmed the contract, and claimed under it by notices pursuant to the act of 1844.

The question upon which the controversy mainly turned in the court below was, whether at the time when *Uzureau* paid the third installment the flooring was laid and the roofing finished.   In order to establish that the work at the date of that payment had not been completed to the extent specified in the contract, the defendants offered as witnesses four of themselves, namely, *McHugh*, *Gardue*, *White* and *Tonglett*; and notwithstanding the objection made to their competency on the ground of interest, they were received by the district judge, with the reservation, as stated in the bill of exceptions, that " the testimony thus objected to was not received by the court to support the claims of the several witnesses giving the testimony, but only in support of the claims belonging to others than the witnesses so testifying."   The testimony of these witnesses as given tended to establish the fact which they were offered to prove. The judgment of the court below was in favor of the defendants.   The reasons assigned and the judgment were as follows:  "The price of the contract between the plaintiff and defendant was $12,000.   Upon this contract the defen-

dant has given receipts on account to plaintiff, which cover the first three install-
ments, say $6400: but one of these payments appears to me to have been made
by anticipation, and therefore not chargeable as against material men and work-
men, whose claims were attested and notified in conformity to the law of 1844.
I therefore credit plaintiff for $4400 cash paid defendant on account of his con-
tract. To this sum is to be added $5165 89, which it cost plaintiff to finish the
houses after defendant had abandoned the work. I also add $900, for ninety
days demurrage under the contract—defendant having been duly put in default
on the 2d October, 1849, and the work being only completed on the 1st January,
1850. The aggregate amount of these three items is $10,465 89, which
deducted from the price of the contract ($12,000) leaves a balance of $1534 11,
to be divided *pro rata* among the following material men and workmen, who
have proved their claims: 1. *D. F. Burthe.* 2. *White* and *Tonglett*, for the
use of *Lyon.* 3. *Nicholas Tlick.* 4. *Widow Tronchin.* 5. *T. Hacker.* 6.
*Allen Hill.* 7. *Depouilly & Co.* 8. *Hayman* and *Holden.* 9. *John Brown.*
10. *John McHugh.* 11. *Edward Gardere.* 12. *Gardere's saw mill.* 13.
*Blois* and *Fortier.* 14. *Mrs. Delachaise.* 15. *Doche* and *Nicolet.* It is there-
fore adjudged and decreed, that the plaintiff *Pierre Uzureau* pay into court the
sum of fifteen hundred and thirty-four dollars and eleven cents, to be divided
among the intervenors above named *pro rata* according to the statement A
annexed to this judgment. It is lastly ordered that plaintiff pay costs."

After a careful review of all the evidence adduced at the trial by the defen-
dants, we are unable to say, that if the testimony of the witnesses objected to
had been excluded, the residue of the testimony would have been sufficient to
sustain the conclusion that the payment of the third installment was premature
and consequently void, under the code and the act of 1844, against the creditors
for materials and labor. It is therefore indispensable to pass upon the bill of
exceptions.

In support of the ruling of the court below the counsel for the creditors has
referred to an elaborate note of the American editors of Mr. Phillips' Treatise
on Evidence, vol 2, p. 86, note 84. The authorities there collected do not
meet the present case. They recognize the doctrine that in general a mere
interest in the question will not disqualify a witness who is not a party in the
cause. That if he will not gain or lose by the event of the suit, or if the verdict
cannot be given in evidence for or against him in another suit, the objection goes
to his credit only, and not to his competency. For example, in an action by a
mariner against the owner of a vessel for wages, another seaman on board the
same vessel was considered a competent witness for the plaintiff, although he
may have a common interest with the plaintiff in the point in controversy, the
objection going only to his credit. So, a person who was connected with the
plaintiff in the same transaction out of which the action arose, and who had com-
menced an action against the same defendant for the same injury, was notwith-
standing considered a competent witness for the plaintiff. So it has been held
that in an action against one underwriter of a policy of insurance, another
underwriter on the same policy may be a witness for the defendant. In short,
bias must not be mistaken for interest.

But here the object of the testimony was to create, in the very cause in which
the witnesses were examined, a general fund in which each witness, being a
party in the cause, would participate. The result of their testimony is that the
court has decreed that the payment was anticipated and void, and has given
them a share in the fund created by the combined testimony of these co-litigants,

each of whom had a like interest to produce this result when he gave his testimony. The incompetency on the score of interest seems to us clear.

With regard to the reservation stated in the bill of exceptions, it seems to us a refinement which, if susceptible at all of actual application in the administration of justice, would be dangerous in practice and inconsistent with the spirit of art. 2260 of the Civil Code. We are not aware of any precedent to sustain it.

Judgment reversed, and cause remanded for a new trial; appellees to pay costs of appeal.